UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALISA WOLF,

   Plaintiff,

v.

              Case No. 15-cv-13560

              HON. MARK A. GOLDSMITH

OAKLAND UNIVERSITY, et al.,

   Defendants.
_____/

**OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR
PARTIAL SUMMARY JUDGMENT (Dkt. 18)**

   In this copyright infringement case, Plaintiff Alisa Wolf, Ph.D., alleges that Defendants violated the Copyright Remedy Clarification Act ("Copyright Act"), 17 U.S.C. § 511(a), by using her copyrighted written curriculum without permission or payment. Defendants have filed a motion for partial summary judgment (Dkt. 18), contending that they are entitled to sovereign immunity under the Eleventh Amendment and cannot be held liable for damages under the Copyright Act. A hearing on the motion was held on July 14, 2016, following which the parties submitted supplemental briefs on the issue of capacity (Dkts. 23, 24). For the reasons discussed below, the Court grants in part and denies in part Defendants' motion.[1]

### I. BACKGROUND

   Wolf claims that she authored an original literary work entitled "Practical Film Vocational Program" before May 10, 2006. Compl. ¶¶ 15, 16 (Dkt. 1). After applying to the U.S. Copyright Office, Wolf states that she received a certificate of registration for the written

---

[1] The Court delayed deciding this motion until the United States had decided whether to intervene in this action, inasmuch as the constitutionality of a federal statute was at issue. See Certification (Dkt. 28). Now that the United States has decided not to intervene, see Notice (Dkt. 30), the Court proceeds to a decision on the motion.

1

curriculum dated August 11, 2006.  Id. ¶ 17.  Wolf claims to be the sole owner of the copyrighted material.  Id. ¶ 20.

Defendant Oakland University is a public university located in Rochester, Michigan. Defs. Br. at 4 (Dkt. 18); Pl. Resp. at 2 (Dkt. 19); Compl. ¶¶ 2, 4.  The Human Development and Child Studies Department within Oakland University's School of Education and Human Services created a Center for Autism.  Defs. Br. at 4.  The Center provides innovative research programs for teachers and programming for individuals and their families living with autism spectrum disorder ("ASD") under the acronym OUCARES.  Id.; Compl. ¶¶ 5, 21, 25.  Defendant Kristin Rohrbeck is an employee of Oakland University and has been the director of OUCARES since May 2015.  Defs. Br. at 7; Pl. Resp. at 2; Compl. ¶ 7.  From October 2012 to April 2015, Rohrbeck was the program coordinator for OUCARES and reported to the then-director of OUCARES, Defendant Kathleen Sweeney.  Defs. Br. at 7; Pl. Resp. at 2; Compl. ¶ 6.

OUCARES offers a two-week film camp for adolescents with ASD, as well as a twenty-week workshop for adults with ASD entitled "Practical Film Workshop for Adults with Autism." Defs. Br. at 5; Compl. ¶¶ 21, 25.  In her complaint, Wolf alleges that Defendants used her copyrighted material in a number of ways without her permission in regard to the camps and workshops, prompting this suit for copyright infringement.  See Compl. ¶¶ 30-45.

## II.  STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When evaluating a summary judgment motion,

> credibility judgments and weighing of the evidence are prohibited. Rather, the evidence should be viewed in the light most favorable to the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Thus, the facts and any inferences that can be drawn from those facts must be viewed in the light most

2

>> favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 374 (6th Cir. 2009).

When a defendant moves for summary judgment, it "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "To withstand summary judgment, the nonmoving party must present sufficient evidence to create a genuine issue of material fact." Humenny v. Genex Corp., 390 F.3d 901, 904 (6th Cir. 2004). The nonmoving party "may not 'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an affirmative showing with proper evidence in order to defeat the motion." Alexander v. CareSource, 576 F.3d 551, 558 (6th Cir. 2009) (quoting Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)). A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmovant]." Anderson, 477 U.S. at 252.

### III. ANALYSIS

"Sovereign immunity is the privilege of the sovereign not to be sued without its consent." Va. Office for Prot. & Advocacy v. Stewart, 563 U.S. 247, 253 (2011). The Eleventh Amendment, which specifically bars "any suit in law or equity, commended or prosecuted against one of the United States by Citizens of another State," U.S. Const. amend. XI, confirmed "the structural understanding that States entered the Union with their sovereign immunity intact," Stewart, 563 U.S. at 253. The doctrine of sovereign immunity extends to suits brought against a state by one of its own citizens, Hanz v. Louisiana, 134 U.S. 1, 15 (1890), and it applies to state

3

agencies, as well as state officials sued in their official capacities, Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989); Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Sovereign immunity applies to Oakland University, because it is a state institution of higher education, having been established under the Michigan Constitution and Michigan statutory law. Mich. Const. art. 8, § 6; Mich. Comp. Laws § 390.151; Hawthorne-Burdine v. Oakland Univ., 158 F. Supp. 3d 586, 598 (E.D. Mich. 2016); Brooks v. Oakland Univ., No. 13-10701, 2013 WL 6191051, at *2 (E.D. Mich. Nov. 26, 2013).[2] It also applies to Sweeney and Rohrbeck, as employees of Oakland University, to the extent they were sued in their official capacities. Will, 491 U.S. at 71. Therefore, unless the State of Michigan has waived its sovereign immunity, or Congress has validly abrogated it under § 5 of the Fourteenth Amendment, this Court will not entertain Wolf's suit. Stewart, 563 U.S. at 254; Russell v. Lundergan-Grimes, 784 F.3d 1037, 1046 (6th Cir. 2015) (sovereign immunity, guaranteed under the Eleventh Amendment, "deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State waives its immunity of Congress abrogates that sovereign immunity").

Wolf puts forth three arguments in support of her position that Defendants are not entitled to sovereign immunity: (i) Congress abrogated sovereign immunity for violations of the Copyright Act; (ii) Oakland University waived sovereign immunity under the Michigan Governmental Tort Liability Act, Mich. Comp. Laws § 691.1410, et seq.; and (iii) Sweeney and Rohrbeck were sued in their individual, not official, capacities. The Court considers each in turn.

### A. The Copyright Remedy Clarification Act and Abrogation of Sovereign Immunity

---

[2] Wolf does not challenge the fact that Oakland University is an agency of the State of Michigan. See Pl. Resp. at 2.

Determining whether Congress abrogated state sovereign immunity turns on two questions: (i) whether Congress "unequivocally expressed its intent to abrogate the immunity," and (ii) whether Congress "acted pursuant to a valid exercise of power." Florida Prepaid Postsecondary Educ. Expense Bd. v. Coll. Sav. Bank, 527 U.S. 627, 635 (1999). The language of the Copyright Act is clear and undoubtedly expressed Congress's intent to abrogate state sovereign immunity:

> Any State . . . shall not be immune, under the Eleventh Amendment of the Constitution of the United States or under any other doctrine of sovereign immunity, from suit in Federal court . . . for a violation of any of the exclusive rights of a copyright owner[.]

17 U.S.C. § 511(a).

As it relates to the second inquiry, it is important to note that "Congress may not abrogate state sovereign immunity pursuant to its Article I powers[.]" Florida Prepaid, 527 U.S. at 636 (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72-73 (1996)); see also Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 364 (2001). However, Congress may still abrogate state sovereign immunity pursuant § 5 to the Fourteenth Amendment, provided the legislation is "appropriate." Florida Prepaid, 527 U.S. at 637; Garrett, 531 U.S. at 364; see also U.S. Cont. XIV amend., § 5 ("The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."). Legislation under § 5 is appropriate if it exhibits "congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." Nevada Dep't of Human Res. v. Hibbs, 538 U.S. 721, 728 (2003) (quoting City of Boerne v. Flores, 521 U.S. 507, 520 (1997)).

The question for this Court is whether the Copyright Act was an appropriate exercise of legislative power under § 5 of the Fourteenth Amendment — a question the Fifth Circuit answered in the negative in Chavez v. Arte Publico Press, 204 F.3d 601 (5th Cir. 2000). In Chavez, the plaintiff claimed that the University of Houston infringed upon her copyright by

5

continuing to publish her book without her consent. The university argued that it was entitled to sovereign immunity under the Eleventh Amendment and sought to dismiss the case. The Fifth Circuit agreed with the university, concluding that Congress did not properly exercise its authority to abrogate sovereign immunity for violations of the Copyright Act.

The Chavez court began its abrogation analysis by noting, as this Court has above, that Congress clearly expressed its intent in the Copyright Act that States submit to suit in federal court for violations of the Act. Id. at 603. The court then turned its attention to whether Congress had the constitutional authority to abrogate state sovereign immunity.

The court first recognized that a footnote in Florida Prepaid supports the position that, because Congress relied only on the Copyright Clause of Article I in enacting the Copyright Act, the court should not consider the Fourteenth Amendment as another ground of constitutionality. Id. at 604-605 (citing Florida Prepaid, 527 U.S. at 642 n.7). And the court had previously held that the Copyright Act was an invalid exercise of Article I legislative power. Id. at 604. Nevertheless, the Fifth Circuit proceeded to determine if Congress properly acted pursuant to § 5 of the Fourteenth Amendment by considering the following: "1) the nature of the injury to be remedied; 2) Congress's consideration of the adequacy of state remedies to redress the injury; and 3) the coverage of the legislation." Id. at 605.

Much like the legislation involving patent infringement at issue in Florida Prepaid, the Fifth Circuit found that the legislative history for the Copyright Act did not demonstrate that the state's conduct — there, copyright infringement — evinced a pattern of constitutional violations. Id. at 605-606. In reaching this conclusion, the court considered the following: (i) House Subcommittee testimony, which acknowledged that "the States are not going to get involved in wholesale violation of the copyright laws"; (ii) a statement from the bill's sponsor that "thus far there have not been any significant number of wholesale takings of copyright rights by States or State entities"; (iii) the Copyright Office report, in which "no more than seven incidents of State

copyright infringement enabled by the Eleventh Amendment were documented"; and (iv) testimony before Congress, which "worried principally about the potential for future abuse." Id. at 606 (emphasis in original). The court also noted that "the concerns of copyright owners" expressed in the Copyright Office report were about the potential for future abuse, and the Senate did not "hear evidence of a pattern of unremedied copyright infringement by the States." Id.

Next, in determining "whether Congress studied the existence and adequacy of state remedies for injured copyright owners when a state infringes their copyrights," the Chavez court concluded that "Congress barely considered the availability of state remedies for infringement." Id. (emphasis added). According to the court, there were "only two allusions to state remedies in the legislative history." Id. The first was a witness's testimony "that his company's attorneys told him that state and local courts were unavailable because only federal courts can hear copyright infringement cases." Id. The other was a survey of state waivers of Eleventh Amendment immunity, which was an appendix to the Copyright Office report. Id. Although Congress "referred briefly to the Copyright Office's report in the House Report on the bill," the state survey was neither mentioned in the House Report nor mentioned in any of the congressional hearings. Id. The survey also "failed to include information on state remedies for the unlawful taking of private property by the state government." Id. According to the court, Congress also "rejected the idea of granting state courts concurrent jurisdiction over copyright cases," which only further "emphasize[d] its lack of interest in state remedies." Id. at 607.

Finally, the Chavez court "examined the breadth of coverage" of the Copyright Act and concluded that "Congress did nothing to confine the reach of the Act by limiting the remedy to certain types of infringement, or providing for suits only against States with questionable remedies or a high incidence of infringement." Id. In support of this conclusion, the court noted that a deprivation under the Due Process Clause must be intentional, not negligent. Id. Copyright infringement actions, however, do not ordinarily require a showing of intent to

infringe. Id. Rather, "knowledge and intent are relevant in regard to damages." Id. Furthermore, the Register of Copyrights "acknowledged that most copyright infringement by states is unintentional." Id. He also stated that "States would want immunity only as a shield for the State treasury from the occasional error or misunderstanding or innocent infringement." Id. As such, the Copyright Act's "indiscriminate scope" could not be reconciled with proportionality principle for due process. Id.

In sum, the Fifth Circuit concluded that the Copyright Act was "an improper exercise of Congressional legislative power" because "the record does not indicate that Congress was responding to the kind of massive constitutional violations that have prompted proper remedial legislation, that it considered the adequacy of state remedies that might have provided the required due process of law, or that it sought to limit the coverage to arguably constitutional violations." Id.

Numerous courts have similarly held that Congress did not validly exercise legislative power to abrogate state sovereign immunity, including courts within the Sixth Circuit. See, e.g., Coyle v. Univ. of Ky., 2 F. Supp. 3d 1014, 1019 (E.D. Ky. 2014); Jacobs v. Memphis Convention & Visitors Bureau, 710 F. Supp. 2d 663, 682 (W.D. Tenn. 2010); Campinha-Bacote v. Regents of the Univ. of Mich., No. 1:15-cv-330, 2016 WL 223408, at *5 (S.D. Ohio Jan. 19, 2016); see also Mihalek Corp. v. State of Mich., 595 F. Supp. 903, 906 (E.D. Mich. 1984); Rainey v. Wayne State Univ., 26 F. Supp. 2d 973, 976 (E.D. Mich. 1998). Wolf recognizes this wealth of jurisprudence. Pl. Resp. at 11. Nevertheless, Wolf requests that this Court examine the Copyright Act ab initio. Id.

Wolf's argument is premised on the Fifth Circuit's conclusion in Chavez that "no more than seven incidents of State copyright infringement enabled by the Eleventh Amendment were documented" in the Copyright Office report. Id. at 14; Chavez at 605-606. That report solicited public comment on "the issue of states' Eleventh Amendment immunity from suit for money

8

damages in copyright cases." Copyright Office Report at 5 (Dkt. 19-1). The forty-four public comments received "almost uniformly chronicled dire financial and other repercussions flowing from state Eleventh Amendment immunity from damages in copyright infringement." Id. The report also notes that "[t]he major concern of copyright owners appear[ed] to be widespread, uncontrollable copying of their works without remuneration," and nineteen commentators "worried that with immunity from damages, states would acquire copies of their works and ceaselessly duplicate them." Id. at 6 (emphasis added). Notably, the report concludes that the "copyright proprietors clearly demonstrate[d] the potential for immediate harm to them." Id. at 99 (emphasis added).

Wolf claims that the Fifth Circuit's statement of "no more than seven incidents" is a "gross mischaracterization of the report," because it did not account for the "comments of significant stakeholders in copyright law." Pl. Resp. at 14. According to Wolf, these "stakeholders" included (i) many of the country's largest publishers; (ii) most of the professional organizations representing creators of copyright law; and (iii) some of the largest software companies around in 1988, all of which purportedly "expressed concern about sovereign immunity to copyright law." Id. 17-18. Wolf infers that the volume of comments about sovereign immunity expressed in the Copyright Office report equates to a greater number of incidents of state copyright infringement that deprived individuals of their constitutional rights. See id. at 21 ("With so many large organizations worried about 'dire financial and other repercussions flowing from state Eleventh Amendment immunity from damages in copyright infringement,' Congress meets its burden of showing 'widespread and persisting deprivation of constitutional rights.'").

Wolf's argument lacks both logic and factual support. Although these comments touch upon the perceived magnitude of damages and the fear of future copyright infringement, which the Fifth Circuit expressly accounted for, see Chavez, 204 F.3d at 606, Wolf provides no cogent

argument connecting comments that "expressed concern about sovereign immunity to copyright law" to the actual number of incidents of state copyright infringement enabled by the Eleventh Amendment at the time the report was written. Nor does she provide any argument or evidence to suggest that any particular comment was actually an incident of infringement that was not accounted for by the Fifth Circuit. Further, Wolf does not explain how a commentator's concern about potential damages that might arise in a copyright infringement case constitutes a deprivation of a property interest in violation of due process. The report may conceivably demonstrate a widespread <u>concern</u> (at least among the public commentators) about sovereign immunity in copyright infringement cases, but the report certainly does not demonstrate a widespread <u>deprivation</u> of constitutional rights. Therefore, Wolf's assertion that the Fifth Circuit grossly mischaracterized the Copyright Office report is baseless.

Moreover, the Fifth Circuit supported its conclusion that the legislative history did not evince a pattern of constitutional violations using more than simply the Copyright Office report. Wolf does not challenge any of these other sources.

Accordingly, the Court declines Wolf's invitation to examine the Copyright Act ab initio. Notably, another court in this circuit has conducted an extensive, independent review of the legislative history of the Copyright Act and reached the same conclusion as the Fifth Circuit. <u>See</u> <u>Jacobs</u>, 710 F. Supp. 2d at 674-682. To avoid needlessly spilt ink, the Court adopts the highly persuasive reasoning of <u>Chavez</u> and <u>Jacobs</u> and concludes that Congress failed to act pursuant to a valid exercise of legislative power when it sought to abrogate state sovereign immunity in the Copyright Act.

**B. Michigan Statutory Governmental Immunity**

"Governmental immunity in Michigan is created and defined by the Governmental Tort Liability Act [ ], Mich. Comp. Laws § 691.1407(1) <u>et seq.</u>" <u>Garden City Educ. Ass'n v. Sch. Dist. of City of Garden City</u>, 975 F. Supp. 2d 780, 787 (E.D. Mich. 2013). Under the Act, a

10

governmental agency and its employees are afforded broad immunity from tort liability "whenever they are engaged in the exercise or discharge of a governmental function." Beals v. Michigan, 871 N.W.2d 5, 9 (Mich. 2015) (citing Mich. Comp. Laws § 691.1407(1)); Jones v. Muskegon Cnty., 625 F.3d 935, 947 (6th Cir. 2010) (same). There are specifically enumerated statutory exceptions to governmental immunity, including the "proprietary-function" exception, which provides, in relevant part:

> The immunity of the governmental agency shall not apply to actions to recover for bodily injury or property damage arising out of the performance of a proprietary function as defined in this section. Proprietary function shall mean any activity which is conducted primarily for the purpose of producing a pecuniary profit for the governmental agency, excluding, however, any activity normally supported by taxes.

Mich. Comp. Laws § 691.1413.

Wolf argues that the "plain language" of this exception constitutes "a waiver of sovereign immunity for property damage arising out of the performance of a proprietary function." Pl. Resp. at 24.[3] Defendants counter, arguing that the exception is "irrelevant to the Eleventh Amendment sovereign immunity analysis" because the Governmental Tort Liability Act affords "immunity from state-law tort liability that the State of Michigan granted to itself (and its agencies and political subdivisions) in [Mich. Comp. Laws § 691.1407]." Defs. Br. at 18-19. According to Defendants, the proprietary-function exception "has never been interpreted to be[ ] a blanket waiver by the State of Michigan of Eleventh Amendment sovereign immunity." Id. at 19. The Court agrees with Defendants.

As the U.S. Supreme Court has consistently held, a "State's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment in the federal courts."

---

[3] Wolf also argues that Oakland University's conduct falls within the proprietary-function exception. See generally Pl. Resp. at 24-25. Because this exception did not waive Michigan's sovereign immunity under the Eleventh Amendment for claims brought under the Copyright Act, see infra, the Court refrains from addressing this argument.

11

Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 99 n.9 (1984) (emphasis added); Atascadero v. State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985) ("Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment."). Rather, a State's waiver of sovereign immunity under the Eleventh Amendment "must be unequivocally expressed." VIBO Corp., Inc. v. Conway, 669 F.3d 675, 691 (6th Cir. 2012) (quoting United States v. King, 395 U.S. 1, 4 (1969)). "Waiver occurs if the state voluntarily invokes federal jurisdiction, or else if the state makes a clear declaration that it intends to submit itself to federal jurisdiction." Id. The Sixth Circuit has recognized that this is a high standard to meet, because courts "will give effect to a state's waiver of Eleventh Amendment immunity only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." Id. (quoting Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 306-307 (1990)); see also Atascadero, 473 U.S. at 238 n.1, 241 (a state's waiver of immunity from federal-court jurisdiction is a "stringent" test because there must be "an unequivocal indication that the State intends to consent to federal jurisdiction that otherwise would be barred by the Eleventh Amendment").

The language of the proprietary-function exception to Michigan's Governmental Tort Liability Act can hardly be said to unequivocally state that Michigan waived its Eleventh Amendment immunity. The exception does not reference or mention the Eleventh Amendment, and it does contain any "clear declaration" that Michigan intends to submit itself to federal jurisdiction. VIBO Corp., Inc, 669 F.3d at 691. Nor does the text of the exception provide an "overwhelming implication" so as to "leave no room for any other reasonable construction." Id. The Court has been unable to locate any contradictory authority to warrant a different interpretation. See Rowland v. Pointe Mouillee Shooting Club, 959 F. Supp. 422, 427-428 (E.D. Mich. 1997) (rejecting a plaintiff's argument that the State of Michigan waived its sovereign

12

immunity, such that there is no Eleventh Amendment immunity when a state is engaged in a proprietary function). Therefore, the Court concludes that the exception did not express Michigan's consent to suits in federal court for claims brought under the Copyright Act.

Because Congress did not abrogate sovereign immunity for violations of the Copyright Act, and Michigan did not waive sovereign immunity under the Eleventh Amendment via the proprietary-function exception to the Michigan Governmental Tort Liability Act, the Court concludes that, as a matter of law, Oakland University is entitled to sovereign immunity from Wolf's Copyright Act claims. This portion of Defendants' motion for partial summary judgment is granted.

### C. Personal or Official Capacity

In their motion, Defendants argue that, "[b]ecause Kathleen Sweeney and Kristin Rohrbeck were acting in their official capacities as employees of Oakland University," they are also entitled to sovereign immunity. Defs. Br. at 12. In response, Wolf argues that sovereign immunity does not bar her claims against Sweeney and Rohrbeck, because she sued these Defendants in their personal capacities. Pl. Resp. at 2, 22. Having found that the initial briefing on the issue of capacity was lacking, the Court requested supplemental briefing following the hearing on Defendants' motion, which the parties timely submitted (Dkts. 23, 24).

When a suit is brought against a state official, the "question arises as to whether that suit is a suit against the State itself." Halderman, 465 U.S. at 101. In general, state sovereign immunity extends to a state official who is sued for money damages in his or her official capacity. Will, 491 U.S. at 71; Cory v. White, 457 U.S. 85, 89-91 (1982); Edelman v. Jordan, 415 U.S. 651, 663 (1974). This is because such suits "generally represent only another way of pleading an action against an entity of which an officer is an agent," and, therefore, they "should be treated as suits against the State." Hafer v. Melo, 502 U.S. 21, 25 (1991).

13

On the other hand, the Eleventh Amendment provides no immunity against officers in their individual and personal capacities. Hutsell v. Sayre, 5 F.3d 996, 1003 (6th Cir. 1993); Hafer, 502 U.S. at 25; Rainey, 26 F. Supp. 2d at 977. Unlike official-capacity suits, which seek "to impose a liability which must be paid from public funds in the state treasury," Edelman, 415 U.S. at 663,[4] relief in individual-capacity suits is sought from the official's personal assets, see, e.g., Graham, 473 U.S. at 166-168; Scheuer v. Rhodes, 416 U.S. 232, 238 (1974); Ford Motor Co., 323 U.S. at 462; Myers v. Anderson, 238 U.S. 368 (1915), abrogated by Harlow v. Fitzgerald, 457 U.S. 800 (1982). Whether or not an official can be sued in his or her individual capacity does not depend on whether the official was acting outside the scope of his or her employment. See Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 714 (1948); Harrington v. Grayson, 764 F. Supp. 464, 468 (E.D. Mich. 1991).

Based on the above, Sweeney and Rohrbeck's entitlement to sovereign immunity ultimately depends on whether Wolf sued them in their official or individual capacities. The Sixth Circuit subscribes to the "course of proceedings" approach to determine the capacity in which a state official has been sued when no explicit capacity statement appears in the complaint. Moore v. City of Harriman, 272 F.3d 769, 772-774 (6th Cir. 2001) (en banc).[5] Under the course-of-proceedings test, a court considers "the nature of the plaintiff's claims, requests for

---

[4] See also Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 48 (1994) (explaining that the "impetus for the Eleventh Amendment" is "the prevention of federal-court judgments that must be paid out of a State's treasury"); Ford Motor Co. v. Ind. Dep't of Treasury, 323 U.S. 459, 464 (1945), overruled on other grounds by Lapides v. Bd. of Regents of Univ. Sys. of Ga., 535 U.S. 613 (2002) ("[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants."); Wilson v. Beebe, 770 F.2d 578, 588 (6th Cir. 1985) ("Only if the purpose of the lawsuit is to coerce state action by the official sued and to impose a liability which must be paid from public funds does the Eleventh Amendment apply." (emphasis in original)).

[5] Although that case involved a claim brought under 42 U.S.C. § 1983, there is no reason to believe that the approach would not apply outside of the civil rights realm. E.g., Pennington Seed, Inc. v. Produce Exch. No. 299, 457 F.3d 1334, 1338-1339 (Fed. Cir. 2006).

14

compensatory or punitive damages, and the nature of any defenses raised in response to the complaint, particularly claims for qualified immunity, to determine whether the defendant had actual knowledge of the potential for individual liability." Shepherd v. Wellman, 313 F.3d 963, 968 (6th Cir. 2002) (citing Moore, 272 F.3d at 772 n.1).

Starting with the complaint itself, it is clear that Wolf did not affirmatively plead capacity. The caption of the complaint does identify Wolf, Sweeney, and Rohrbeck as "individual[s]," as opposed to Oakland University, which is identified as "a Public University." Compl. at 1 (Dkt. 1). The caption does not list either Sweeney or Rohrbeck by their official titles. Aside from this one mention of being "an individual," there is no indication whatsoever in the complaint concerning whether the suit is being brought against Sweeney and Rohrbeck in their official or individual capacities. And the word "capacity" itself does not appear in the complaint at all.

Turning to the substance of the complaint, it would appear as though Sweeney and Rohrbeck were not sued in their individual capacities. For instance, in the "Nature of Action" portion of the complaint, Wolf only states that the "Defendant, OU [Oakland University], is a State actor pursuant to 17 U.S.C. § 501(a)." Compl. ¶ 10. There is no mention of Sweeney or Rohrbeck. In the next paragraph, Wolf lumps all Defendants together and proceeds to simply refer to them as "Defendant" for the remainder of the complaint. See id. ¶ 11 ("Hereinafter, the term Defendant shall mean [Oakland University], OUCARES, Sweeney and/or Rohrbeck."). Id. ¶ 11. Then, in the "Jurisdiction" portion of the complaint, Wolf claims that "[t]his Court has personal jurisdiction over Defendant, OU, because it is a state actor that resides in the State of Michigan." Id. ¶ 13. There is no mention about whether the Court has personal jurisdiction over Sweeney or Rohrbeck. And finally, Wolf's statement of facts does not distinguish the specific conduct of any particular individual Defendant. By lumping all of the Defendants together for

15

purposes of its factual allegations and claims, Wolf has failed to actually identify what Sweeney and/or Rohrbeck personally did that allegedly violated the Copyright Act.[6]

However, Wolf does appear to request compensatory damages, which weighs in favor of a personal capacity suit. See id. at 18 ¶ F ("Defendant pay as damages to the plaintiff all profits and advantages gained from infringing Plaintiff's copyright, plus all loss experienced by Plaintiff as a result of Defendant infringing Plaintiff's copyright, but in no event should such damages be less than the statutory minimum, per copy, per count."). Moreover, if Wolf were merely bringing an official-capacity suit against the individual currently occupying the position of Director of OUCARES, she would not have included both Sweeney and Rohrbeck, as the latter has preceded the former in that position. On the whole, the complaint, by itself, is likely insufficient to provide notice to Sweeney and Rohrbeck that they were being sued in their individual capacities.

Nevertheless, Wolf's response to Defendants' motion for partial summary judgment, which states that she is suing Sweeney and Rohrbeck in their individual capacities, Pl. Resp. at 2, 22, appears to "rectify deficiencies in the initial pleadings." Moore, 272 F.3d at 774 (citing Abdur-Rahman v. Mich. Dep't of Corr., 65 F.3d 489, 491 (6th Cir. 1995); see also id. ("Even assuming the complaint itself failed to provide sufficient notice, Moore's response to the officers' motion to dismiss clarified any remaining ambiguity."). Therefore, based on the course of proceedings in this case, Sweeney and Rohrbeck have been provided with sufficient notice that they are being sued in their individual capacities, and qualified immunity remains at their disposal to invoke.

In sum, Sweeney and Rohrbeck are both subject to the Copyright Act. See 17 U.S.C. § 501(a) ("Anyone who violates any of the exclusive rights of the copyright owner . . . is an

---

[6] Defendants have not challenged this particular pleading deficiency.

infringer of the copyright.").[7]  Because Wolf's claims against Sweeney and Rohrbeck seek to hold them liable in their individual capacities for their conduct in violation of the Copyright Act, a judgment against Sweeney and Rohrbeck in their individual capacities would be paid out of their personal funds and not from the state treasury.  See Rainey, 26 F. Supp. 2d at 977 (court had jurisdiction over copyright infringement claim against university professor sued in his individual capacity because the suit would "not require that any monies be paid from the state's treasury").

Accordingly, this portion of Defendants' motion for partial summary judgment is denied.

### IV.  CONCLUSION

For the reasons stated above, the Court grants in part and denies in part Defendants' motion for partial summary judgment (Dkt. 18).  On the one hand, Oakland University is entitled to sovereign immunity under the Eleventh Amendment and cannot be held liable for monetary damages under the Copyright Act.  On the other hand, Sweeney and Rohrbeck — who are sued in their personal capacities — are not entitled to sovereign immunity.

SO ORDERED.

Dated:  December 5, 2016  
     Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 5, 2016.

s/Karri Sandusky  
Case Manager

---

[7] At least one court has held that the Copyright Act does not apply to a state.  See Lane v. First Nat'l Bank of Boston, 687 F. Supp. 11, 14-15 (D. Mass. 1988) (the word "anyone" in the Copyright Act is insufficient to include a state).